```
              UNITED STATES DISTRICT COURT
             MIDDLE DISTRICT OF PENNSYLVANIA

SHAWN M. MITCHELL,            :    CIVIL NO. 3:05-2122
                              :
        Plaintiff             :    (Judge Munley)
                              :
   v.                         :    (Magistrate Judge Smyser)
                              :
JO ANNE B. BARNHART,          :
Commissioner of Social        :
Security,                     :
        Defendant             :
                              :
```

**REPORT AND RECOMMENDATION**

The plaintiff has brought this action under the authority of 42 U.S.C.§ 405(g) to obtain judicial review of the decision of the Commissioner of Social Security denying the plaintiff's claims for disability insurance benefits and supplemental security income.

**I. Procedural Background**

The plaintiff applied for benefits on March 25, 2004, alleging that he had become disabled due to diabetes mellitus with related neuropathy since July 1, 2002. (Tr. 23, 144-46, 359-61). His applications were denied initially. (Tr. 92, 99-102, 353-58). The plaintiff requested a hearing. A hearing was held before an Administrative Law Judge (ALJ) on May 10, 2005.

(Tr. 20-91, 98).  After the hearing, the plaintiff amended his alleged onset date to June 29, 2004.  (Tr. 134).

On June 17, 2005, the ALJ issued a decision denying the plaintiff's claims.  (Tr. 10-19).  The plaintiff requested a review by the Appeals Council, which denied his request, making the ALJ's decision the final decision of the Commissioner.  42 U.S.C. § 405(g).  (Tr. 5-9, 378-86).  The plaintiff then commenced this action for judicial review of the Commissioner's final decision.  (Doc. 1).

**II.  Factual background**

The plaintiff was thirty-one-years old at the time of his applications, making him a "younger" individual under the Regulations.  (Tr. 144, 146, 359, 361).  20 C.F.R. §§ 404.1563(c), 416.963(c).  He has an eleventh grade education and he has past work experience as a delivery driver, an electronic installation technician, a dock worker, and a tile setter.  (Tr. 32-35).

The plaintiff was diagnosed with diabetes in February of 2002.  (Tr. 317).  In September of 2003, he sought treatment for

a diabetic ulcer that had developed on his left toe. He had been non-compliant with his prescribed diabetes treatment from the time of his diagnosis. (Tr. 307). The plaintiff's toe ulcer subsequently improved with proper care. (Tr. 301, 305-09). The plaintiff received follow-up care with various physicians at the same office, including David Smith, M.D., and Emily Sippel, M.D., approximately on a monthly basis. (Tr. 262-68, 284-316).

By January of 2004, the ulcer on the plaintiff's toe had almost healed, but he had developed two new ulcers on his lower right leg. (Tr. 301-02). The ulcers were neither weeping nor secondarily infected. (Tr. 301). Dr. Smith recommended triple antibiotic ointment and adjusted the plaintiff's medications. *Id.* In March of 2004, the plaintiff reported that he had quit his job. He testified that he stopped working because the constant kneeling and carrying of heavy items had prevented his left toe ulcer from healing properly. (Tr. 36, 298). He stated that he also had headaches, blurry vision, and blacking out when going from a standing to a squatting position; he was "urgently" referred to a neurologist. (Tr. 298).

From the time the plaintiff stopped working, in March of

3

2004, through the time of the hearing, he had poorly controlled diabetes. (Tr. 285, 287-88, 290-91, 193-95, 298-99, 301, 303, 305, 307, 309, 318, 326, 330). His physicians consistently recommended that he lose weight, control his diet, exercise, and fill the prescription that he had been given for orthopedic shoes. (Tr. 294-96, 303, 305-09, 327, 336-37, 344). At times, the plaintiff reported pain and decreased sensation in his legs. (Tr. 285, 290, 294-95, 318, 334). His physicians consistently noted a normal range of motion in his arms and legs, with full muscle strength in his upper and lower extremities, and normal gait. (Tr. 294, 318, 344).

At the request of the Bureau of Disability Determination, Dr. Sippel filled out a medical source statement on May 20, 2004. (Tr. 263-66). Dr. Sippel reported that the plaintiff had diabetes which was "suboptimally controlled" with medication "but improving." (Tr. 263). Dr. Sippel stated that the plaintiff's prognosis was "good". Dr. Sippel stated an opinion that the plaintiff had no limitations with respect to performing physical work-related activities, including lifting, carrying, standing, walking, sitting, pushing, pulling, and other postural and physical functions. (Tr. 265, 267-68).

4

Dr. Sippel referred the plaintiff to Olofunsho Famuyiwa, M.D., an endocrinologist, in December of 2004.  (Tr. 334-37). The plaintiff described numerous symptoms, including fatigue, numbness in his hands and feet, and blurred vision.  (Tr. 334). He reported that he tried to adhere to a proper diet.  He reported that he did not exercise much.  (Tr. 334).  He also reported that he continued to play classic rock in a band, which involved working locally from 9:00 p.m. to 1:00 a.m.  (Tr. 335). Dr. Famuyiwa advised the plaintiff to eat properly and to increase his physical activity.  Dr. Famuyiwa adjusted the plaintiff's medications and recommended additional tests.  (Tr. 336-37).

In January of 2005, laboratory tests confirmed that the plaintiff's diabetes was poorly controlled.  (Tr. 326, 330).  Dr. Famuyiwa again encouraged a changed diet and exercise.  (Tr. 326, 330).  The following month, Dr. Famuyiwa reported that the plaintiff had not yet reached optimal compliance with the prescribed diet, although he had attended some diabetes education classes.  (Tr. 326).  The plaintiff reported that he was feeling "reasonably well," despite pain and numbness in his feet.  *Id.*

Upon examination, Dr. Famuyiwa reported that the plaintiff had gained ten pounds and that his thyroid gland was enlarged.  *Id.*  According to Dr. Famuyiwa, the plaintiff had improved glycemic control with regard to his diabetes, but it was not within target.  (Tr. 327).  Dr. Famuyiwa encouraged the plaintiff to complete diabetes education classes as well as to follow the prescribed diet and to exercise.  *Id.*

After a four-month hiatus during which the plaintiff was treated by Dr. Famuyiwa, the plaintiff returned to Dr. Sippel on March 9, 2005.  (Tr. 285-86).  Dr. Sippel noted that the plaintiff continued to complain of pain with "burning" in his legs, hands, and forearms and dizziness.  (Tr. 285).  Dr. Sippel reported that the plaintiff had gained four pounds since his last visit.  *Id*.  She observed a few lesions on his lower extremities that had been slowly healing.  *Id.*  Dr. Sippel noted that the plaintiff had markedly decreased sensation to light touch in his lower leg and in his arms.  *Id*.

Dr. Sippel then filled out a medical source statement, assessing the plaintiff's work-related physical activities as she had ten months earlier.  (Tr. 312-14).  This time, however, Dr.

6

Sippel opined that the plaintiff had work-related restrictions. In support of her assessment, Dr. Sippel reported that "diabetes is a progressive illness which has caused a neuropathy which has progressed over the last year and will not likely improve." (Tr. 314). Dr. Sippel opined that the plaintiff could lift and carry ten pounds occasionally and less than ten pounds frequently; could stand and/or walk for less than two hours and sit for about six hours during an eight-hour workday; and could perform unlimited pushing and/or pulling. (Tr. 311-12). Dr. Sippel also opined that the plaintiff could never climb or balance; could occasionally kneel, crouch and stoop; and could frequently crawl. (Tr. 312). With regard to manipulative limitations, Dr. Sippel considered his ability to finger and feel to be limited but his ability to reach and handle to be unlimited. (Tr. 313). She also concluded he had limited ability to see and should not be exposed to temperature extremes or hazards. (Tr. 314).

The plaintiff told Tuan Vu, M.D., a neurologist, in March of 2004, that he had been having an increased tingling and pain in his legs for the past six months, as well as fatigue, lower back pain, tingling in his hands, sleep problems, dizziness and headaches. (Tr. 317). Dr. Vu reported that the plaintiff had

normal memory and cognition and appeared alert and attentive. (Tr. 318).  Dr. Vu also noted decreased perception of pinprick and light touch in the plaintiff's legs and hands, but normal strength, tone and bulk in his arms and legs.  *Id*.

Dr. Vu assessed the plaintiff's condition as poorly-controlled diabetes with symptoms of a sensorimotor peripheral neuropathy most likely due to diabetes.  *Id*.  Dr. Vu prescribed medication for pain and sleep disturbance.  (Tr. 319).  He noted that the plaintiff's over-the-counter headache medication had been working well, and so recommended that the plaintiff continue taking that.  *Id*.

When the plaintiff returned to Dr. Vu in March of 2005 for a follow-up, with the exception of a small, healing ulcer on his left big toe, his physical examination was unremarkable.  (Tr. 343).  The plaintiff appeared to be alert and oriented with no changes in his memory or cognition.  (Tr. 344).  Although perception of light touch and pinprick was decreased distally in his limbs, a motor examination revealed normal strength, tone and bulk.  *Id.*  Dr. Vu increased the plaintiff's pain medication dosage and noted that he hoped that the plaintiff would continue

to exercise after he was finished with physical therapy.  *Id*.

The plaintiff introduced additional impairments, carpal tunnel syndrome and depression, at his hearing.  Two references to depression are found in the plaintiff's medical record.  On August 9, 2004, the plaintiff's girlfriend called his physician to report the plaintiff was suicidal.  His physician recommended that he go to a crisis center.  The plaintiff did not go to a crisis center.  (Tr. 292).  Two days later, the plaintiff denied suicidal or homicidal thoughts and reported a "better" overall mood.  *Id.*  The plaintiff told Dr. Sippel in March 2005 that he felt "down in the dumps" and angry about his illness and feared that he was going to die.  (Tr. 285).  He denied suicidal and homicidal ideations.  He said that his appetite was sometimes good and sometimes decreased.  *Id.*  His girlfriend accompanied him to that visit and expressed concern about his depressed mood.  *Id.*  Dr. Sippel diagnosed depression and prescribed Prozac.  *Id.*

With respect the plaintiff's carpal tunnel syndrome, a July 19, 2004 electrodiagnostic study ordered by Dr. Vu to evaluate possible neuropathy had evidence of a sensory peripheral neuropathy, likely related to his diabetes mellitus, and a co-

9

existing right median nerve lesion at the wrist consistent with carpal tunnel syndrome.[1] (Tr. 279, 321). No active denervation was apparent. *Id.*

The ALJ found that the plaintiff retains the ability to lift and carry up to ten pounds, to stand and/or walk for up to two hours during an eight-hour workday, with normal breaks, and to occasionally climb stairs and balance. The plaintiff can not use foot/leg controls bilaterally, climb ropes, ladders or scaffolding, kneel, crouch, squat or crawl. (Tr. 16). He can not do jobs which involve loud noise, high, exposed places or fast moving machinery on the ground. *Id.*

**III. Disability Determination Process**

The Commissioner has promulgated regulations creating a five-step process to determine if a claimant is disabled. The ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant

---

[1] Carpal tunnel syndrome occurs when the median nerve, which runs from the forearm into the hand, becomes pressed or squeezed at the wrist. The result may be pain, weakness, or numbness in the hand and wrist, radiating up the arm. National Institute of Neurological Disorders and Stroke, Carpal Tunnel Syndrome Fact Sheet, *at* http://www.ninds.nih.gov/disorders/carpal_tunnel/detail_carpal_tunnel.htm

has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents him from doing past relevant work; and (5) whether the claimant's impairment prevents him from doing any other work.  20 C.F.R. §§ 404.1520, 416.920.

In this case, the ALJ determined that (1) the plaintiff had not engaged in substantial gainful activity since June 29, 2004; (2) the plaintiff's depression and carpal tunnel syndrome were not severe but the plaintiff's diabetes mellitus and related neuropathy were severe; (3) although they did not meet or medically equal any listed impairment(s); (4) the plaintiff was unable to perform his past relevant work; but (5) had the residual functional capacity to perform a significant range of sedentary work. (Tr. 14-15, 18-19.) Because the plaintiff was found to be able to perform work that exists in significant numbers in the national economy, the ALJ determined that the plaintiff is not disabled. (Tr. 19). 20 C.F.R. §§ 404.1520(g), 416.920(g).

**IV.   Discussion**

A.   Standard of Review

We review the Commissioner's decision to determine whether it is supported by substantial evidence. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)(quoting *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995).  A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).  However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966).

B.   Whether the ALJ erred in not finding the plaintiff's depression and carpal tunnel syndrome to be severe impairments

The plaintiff first argues that the ALJ erred in not finding the plaintiff's depression and carpal tunnel syndrome

12

to be severe impairments.[2] (Tr. 15). (Doc. 8 at 4). This is construed as an argument that the ALJ's finding is not supported by substantial evidence. The plaintiff contends that because the threshold for severity under the Regulations is *de minimus*, SSR 88-3c, the ALJ should have found his depression and carpal tunnel syndrome to be severe. 1988 WL 236022, *8.

The "severity regulation" requires a claimant to show that he or she has an "impairment ... which significantly limits [his or her] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). The claimant bears the burden of production and persuasion. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Here, the ALJ found that the plaintiff had not met that burden with respect to his carpal tunnel syndrome because the record showed no significant treatment or limitations related to the condition. (Tr. 15).

The ALJ considered as probative that the only record

---

[2] The ALJ found the plaintiff's depression to not be "medically determinable." (Tr. 15). Disability is defined in the Regulations as the "inability to engage in any substantial gainful activity by reason of any *medically determinable* physical or *mental impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(A) (emphasis added). The Regulations instruct that the plaintiff must show evidence from acceptable medical sources, consisting of medically acceptable clinical and laboratory diagnostic techniques, to establish a medically determinable impairment. 20 C.F.R. §§ 404.1508, 404.1513, 416.908, 416.913.

evidence of carpal tunnel syndrome was one study confirming that the plaintiff had the condition. (Tr. 15, 279, 321). The plaintiff had obtained no treatment for it and none of his doctors had discussed it with him. (Tr. 15). The plaintiff's physicians have reported mild sensory deficits in his hands. These deficits were attributed to the plaintiff's diabetes-related neuropathy, which the ALJ did find severe. (Tr. 285, 318, 335, 343-44).

The plaintiff stopped working because constant kneeling and carrying of heavy loads was interfering with the healing of a toe ulcer. He had not alleged problems using his hands. (Tr. 36). The ALJ's finding that carpal tunnel syndrome did not significantly limit the plaintiff's physical ability to do basic work activities is supported by substantial evidence. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Similarly, there is little medical evidence regarding the plaintiff's depression; only two references appear in the record. The plaintiff's girlfriend reported that he was suicidal in August 2004. The plaintiff did not seek treatment, and two days later told his family physician, Dr. Sippel, that his mood was

14

"better." (Tr. 292). In March of 2005, Dr. Sippel, diagnosed depression and prescribed Prozac after the plaintiff told her that he had been down and felt angry about his diabetes. (Tr. 58-59). The ALJ concluded that the plaintiff's depression was not medically determinable.

The claimant bears the burden of production and persuasion, and must establish a mental impairment by "medical evidence consisting of signs, symptoms, and laboratory findings" rather than by a statement of symptoms. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). 20 C.F.R. §§ 404.1508, 416.908.

The plaintiff argues that Dr. Sippel's diagnosis and Prozac prescription two months before the hearing demonstrates a severe impairment. (Doc. 8 at 6). We can not say that there is such documentation of the plaintiff's depression that the ALJ's conclusion that his depression is not a severe impairment is supported by substantial evidence. *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966) (noting that in an adequately developed factual record, even "the possibility of drawing two inconsistent conclusions" does not preclude a finding from being supported by substantial evidence).

15

Neither Dr. Sippel nor any other physician recommended that the plaintiff pursue mental health treatment, and the plaintiff has no history of mental health treatment, counseling, or hospitalization. (Tr. 58). Dr. Vu, the plaintiff's neurologist, consistently reported that the plaintiff had normal memory and cognition and that he appeared alert and attentive. (Tr. 318, 344). Substantial evidence supports the ALJ's determination that, because of the lack of evidence regarding the plaintiff's depression, it is not a medically determinable severe impairment.

### C.  Whether the ALJ erred in not giving controlling weight to the plaintiff treating physician's residual functional capacity assessment

The plaintiff also argues that the ALJ erred in not giving controlling weight to Dr. Sippel's March 9, 2005 medical source statement, in which she opined that the plaintiff could stand/walk less than two hours, and sit about six hours, in an eight-hour day, indicating a capacity for less than sedentary work.[3] (Tr. 311-12). The ALJ gave Dr. Sippel's residual functional capacity assessment limited weight.

---

[3] The ALJ, the plaintiff, and the Commissioner all seem to agree that Dr. Sippel's residual functional capacity assessment, which limits the plaintiff to standing or walking less than two hours, and sitting about six hours, in an eight-hour day, effectively render the plaintiff unable to work an eight-hour day. (Tr. 16; Doc. 7 at 15; Doc. 11 at 17).

16

Dr. Sippel's March 2005 assessment, the ALJ found, was inconsistent with her earlier May 2004 assessment, in which she opined that the plaintiff had had no physical exertional limitations whatsoever. (Tr. 16, 263-66, 312-14). The ALJ found that the plaintiff's treatment records do not demonstrate a deterioration in his condition which would justify such a reduction in his functional abilities to less than sedentary work. (Tr. 16).

The ALJ found that Dr. Sippel's latter assessment also inconsistent with other objective medical evidence showing that the plaintiff retained normal motor strength and gait and experienced improvement with proper treatment. (Tr. 16). *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that in order to be entitled to controlling or great weight, a physician's opinion must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and must not be "inconsistent with the other substantial evidence" in the record). In June of 2004, Dr. Smith had reported that the plaintiff had equal range of motion in his arms and legs with no deficits and normal motor strength. (Tr. 294). Dr. Famuyima reported in December of 2004 that the plaintiff had normal motor power and coordination (Tr.

17

335).  In June of 2004 and March of 2005, Dr. Vu reported that the plaintiff had normal strength, tone and bulk in his arms and legs, and that his gait and tandem walking were normal.  (Tr. 318, 344).

The plaintiff had diabetic ulcers on his legs and feet during the relevant time period.  The ulcers remained uninfected and began to heal well with proper care.  (Tr. 285, 290-91, 293, 318, 326, 335, 343).  The plaintiff's doctors did not discourage physical activity and exercise.  The plaintiff contends that the ALJ rejected Dr. Sippel's residual functional capacity findings in their entirety, but the ALJ did actually incorporate many of Dr. Sippel's limitations.  (Tr. 16).  Dr. Sippel opined that the plaintiff could frequently lift ten pounds; had unlimited ability to push or pull; could never climb, crawl, or balance; and could occasionally kneel, crouch, stoop, and perform fingering and feeling.  (Tr. 311-13).  The ALJ's Residual functional capacity was similar to, and in some aspects more restrictive than, Dr. Sippel's.  The ALJ found that the plaintiff could lift and carry ten pounds; could never climb ropes, ladders or scaffolding, kneel, crouch, squat, crawl, or use foot/leg controls bilaterally; and could occasionally climb stairs and balance.

(Tr. 16).

The plaintiff also contends that his testimony supported a finding of disability. (Doc. 8 at 12). The plaintiff testified that he can walk for ten minutes, needs to lie down for three hours after every three hours of activity, and could not exercise because of pain in his legs. (Tr. 49-50, 65-66, 72). The ALJ found the plaintiff generally credible, but found that the extent of the limitations alleged by the plaintiff is not consistent with the medical evidence and his daily activities. (Tr. 16). The plaintiff is able to drive, take care of his personal needs, and played four-hour gigs in a rock band. (Tr. 157, 335). Dr. Sippel did not limit the plaintiff to only ten minutes of walking in her second residual functional capacity assessment. (Tr. 311). The plaintiff's physicians consistently urged him to be more physically active in order to reduce his neuropathic pain and help get his blood sugars in therapeutic range. (Tr. 296, 305-09, 327, 336-37, 344).

The Commissioner's decision is supported by substantial evidence. On the basis of the foregoing, it is recommended that the appeal of the plaintiff be denied.


                                        ***/s/ J. Andrew Smyser***
                                        J. Andrew Smyser
                                        Magistrate Judge

Dated:  May 22, 2006.